TAYLOR v. SANFORD.†

(Court of Civil Appeals of Texas. Amarillo.
June 29, 1912. Rehearing Denied
Oct. 12, 1912.)

1. EXCHANGE OF PROPERTY (§ 3*)—OFFER AND ACCEPTANCE.

A landowner, being about to commit suicide, executed a deed to certain real property to defendant, his stenographer, which conveyed the property to her for an alleged consideration of $500, and a conveyance by her to decedent of certain other lands. The deed was also subject to certain vendor's lien notes on the property conveyed, which the deed provided defendant should assume. Blank deeds were also sent to defendant to execute as a conveyance of the property to be conveyed to decedent. The deeds did not reach defendant until after decedent's death, prior to which she had no knowledge of the transaction. *Held*, that the transaction was only a proposition for sale or exchange of land, and, as the creditor died before the proposition was acted upon and before defendant knew of it, the proposition was withdrawn as a matter of law on the death of the grantor.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 3, 5, 7; Dec. Dig. § 3.*]

2. GIFTS (§ 47*)—ACCEPTANCE—PRESUMPTION.

Where a landowner executed a deed to his stenographer of land, subject to certain vendor's lien notes which the grantee was to assume, in consideration of $500 and a conveyance to decedent of other lands, there was no such showing of benefit to the grantee as to raise the presumption of acceptance of the deed as a gift to the grantee.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 81–86; Dec. Dig. § 47.*]

Appeal from District Court, Randall County; J. N. Browning, Judge.

Action by J. M. Sanford, as administrator of the estate of R. H. Sanford, deceased, against Annie Lee Taylor. Judgment for plaintiff, and defendant appeals. Affirmed.

J. C. Hunt, of Canyon, and A. S. Rollins, of Amarillo, for appellant. Madden, Trulove & Kimbrough, of Amarillo, for appellee.

GRAHAM, C. J. This is an appeal from a judgment rendered by the district court of Randall county on November 22, 1911, whereby a certain deed or written instrument was canceled, and which had theretofore been signed and acknowledged by R. H. Sanford, and which purported to convey to the appellant herein certain real estate therein described. The record shows that on August 1, 1911, appellee, as administrator of the estate of his deceased brother, R. H. Sanford, filed his petition in the district court of Randall county to cancel a certain deed or written instrument therein fully described, and as a basis for said cancellation alleged, in substance, that the sale and conveyance evidenced by said written instrument had never been completed, in that the conditions therein submitted had not been accepted by the grantee therein mentioned prior to the death of the purported grantor; second, because the purported grantor was mentally

incapacitated to make a valid and binding conveyance at the time same purports to have been executed; third, because there was no consideration moving between the purported grantor and grantee in said purported conveyance; fourth, because the estate of the purported grantor was insolvent at the time of said conveyance, or would be made so in the event said conveyance be held binding and that creditor's interest would thereby suffer; fifth, allegation is made that the said purported conveyance creates a cloud upon the title of the estate of R. H. Sanford, deceased, in the property mentioned, and prayer is made that the deed be canceled and held for naught. The record shows that this petition was duly verified by affidavit of appellee herein.

On November 21, 1911, appellant, by original answer, pleaded a general demurrer and many special exceptions, a general denial, and pleaded especially the execution and delivery of the instrument sought to be canceled for a good and sufficient consideration prior to the death of R. H. Sanford; that said R. H. Sanford and appellant were at the time of the execution of said instrument, as well as at the time of the death of R. H. Sanford, engaged to be married; that appellant had accepted the terms and conditions in the instrument sought to be canceled, had become bound thereby, and was in good faith carrying them out, prayed for general and special relief, and that plaintiff take nothing by his suit. On November 21, 1911, appellee filed his first amended petition, alleging as grounds for cancellation of the instrument those that had been alleged in his original petition except the insolvency of the estate, which allegation was eliminated in the amended pleading as a result of the trial court having sustained a special exception to that portion of the original petition. The amended petition was duly verified, and prayer was made therein as in the original petition. The case was tried before a jury, and at the conclusion of the introduction of evidence both plaintiff and defendant asked for a peremptory instruction in their favor, respectively. The trial court gave a peremptory instruction for the plaintiff, which resulted in a verdict in his favor as administrator, on which judgment was rendered as first above stated, from which judgment appellant brings the case before this court on two assignments of error, as follows: First assignment: "The court erred in giving a peremptory instruction for the plaintiff, and not giving a peremptory instruction for the defendant, because the evidence is uncontradicted that the deed from R. H. Sanford to Annie Lee Taylor was delivered." Second assignment: "The court erred in giving a peremptory instruction for the plaintiff because there was evidence as to the delivery of the deed from R. H. San-

ford to Annie Lee Taylor to make it necessary for the question to be submitted to the jury."

[1] Many propositions are submitted under said assignments by appellant, but, under the view we have of the disposition that should be made of the case on the record before us, we feel no good purpose will be served by a discussion of said propositions or assignments separately. The statement of facts shows without conflict in the evidence that for some time prior to the date of the instrument sought to be canceled R. H. Sanford, the purported grantor therein, was and had been sheriff and tax collector of Randall county, Tex., and that appellant, Miss Annie Lee Taylor, had been his office clerk or stenographer; that at the time the instrument bears date she was at her home in a distant county of the state on a visit; that prior to her leaving for her visit she had advanced some funds to R. H. Sanford, which had not been repaid, and the evidence tends to show that a marriage engagement had existed between R. H. Sanford and appellant, but that some slight estrangement had arisen between them.

The statement of facts also shows without conflict: That R. H. Sanford was due the state of Texas and county of Randall on the date the instrument sought to be canceled was executed taxes which had been collected by him, and which had not been accounted for, in the aggregate of nearly $1,000, and that he owed other indebtedness which was then due, and that he had shortly before made efforts to borrow money, evidently with which to take care of his indebtedness, and sought to use the property involved in this suit as collateral to secure payment of the loan. These conditions existing, the statement of facts further shows that on June 14, 1911, R. H. Sanford prepared or caused to be prepared the written instrument sought to be canceled and signed, and acknowledged the same before a proper officer in Randall county, of which the following is a copy: "Warranty Deed. The State of Texas, County of Randall. Know all men by these presents that I, R. H. Sanford, a bachelor, of the county of Randall, state of Texas, for and in consideration of the sum of ($500.00) five hundred dollars cash in hand paid, the receipt of which is hereby acknowledged and the further consideration of the transfer to me of a certain parcel or tract of land situated in the town of Hamblin, county of Jones, state of Texas, known and described as being all of lot No. 2 in block No. (7) seven of the Orient addition to the town of Hamblin; recorded in deed Book No. 71, on page 159 of the deed records of Jones county, Texas; also that certain tract or parcel of land located in Presidio county, Texas, known and described as being the southeast one-quarter of the southeast one-quarter of survey No. 5 in block No. 209, in the name of the Texas & St. Louis Ry. Co. patented to said company and containing (40) forty acres of land, recorded in Book No. 32, on pages 377 and 378 of the Deed Records of Presidio county, Texas, all now of record in the name of Miss Annie Lee Taylor; to me paid and transferred by Miss Annie Lee Taylor, a feme sole, have granted, sold and conveyed unto the said Annie Lee Taylor of the county of Collin, state of Texas, all that certain tracts or parcels of land situated in Canyon City, Randall county, Texas, known and described as follows: All of lots No. (1) one, (2) two (3) three and (4) four, in block No. (25) as shown by the plat of said Canyon City, of record in the Deed Records of said Randall county, Texas; to have and to hold the above-described premises with all and singular the rights and appurtenances thereto in any wise belonging to the said Annie Lee Taylor, her heirs and assigns forever, and I do hereby bind myself and my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Annie Lee Taylor and her heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof. It is further agreed and bargained that the grantee herein, Miss Annie Lee Taylor, is to assume and does assume the payment of three vendor's lien notes outstanding against lots 1, 2, and 3 as above described, said notes being drawn in favor of B. F. and S. P. Merry, the first note No. 1 being for the amount of $250.00 due on the 10th day of September, 1911, note No. 3 due Sept. 10th, 1912, and note No. 3 due Sept. 10th, 1913, all of said notes representing $250.00 each and an aggregate of ($750.00) seven hundred and fifty dollars, and bear interest at the rate of eight per cent. per annum, interest payable annually. And it is expressly agreed and stipulated that the vendor's lien as retained above, against the above-described lots 1, 2, and 3, in block No. 25, in favor of B. F. and S. P. Merry, premises and improvements, until the above-described notes and all interest thereon are fully paid according to their face and tenor, effect and reading, when this deed shall become absolute. It being further understood that lot No. 4, in block No. 25, as described above is clear from all incumbrance and this title is made perfect from date of deed. Witness my hand at Canyon, this 14th day of June, A. D. 1911." That forthwith he delivered the same to the clerk of the county court of Randall county, and procured same to be recorded in the deed records of that county and returned to him. That he at the same time prepared or caused to be prepared a written instrument, covering the transfer of lot No. 2, in block No. 7, in the Orient addition to the town of Hamblin, located in Jones county, Tex., whereby the appellant would convey to R. H. Sanford the property therein mentioned, the consideration

for which on the face of said instrument referred to is the deed from Sanford to appellant; and on the same day he prepared, or caused to be prepared, a deed or written instrument, covering the S. E. ¼ of the S. E. ¼ of survey No. 5, in block No. 209, in the name of the Texas & St. Louis Railway Company, located in Presidio county, Tex., in which instrument said property would be conveyed by the appellant to said R. H. Sanford for consideration expressed on the face of said instrument. Reference is made to the deed from Sanford to appellant. That on the same day R. H. Sanford wrote a letter to the appellant, of which the following is a copy: "Canyon, Texas, June 14, 11. Dear Lee: I am sending you some deeds to sign, herewith, also enclosed a lot of other papers which are yours. Yours to keep. I want you to have them as I am deeding to you my house and the 4 lots where Cannot lives. The deed I am putting on record here and as soon as it is recorded it will be sent to you. I want you to have the house as it will make you a good living and also furnish you a home. Keep it darling as a gift from me. Under no circumstances dont give it up unless you sell it in order to support yourself. You will see from the deed that there are three notes standing against it that will fall due, one this fall on Sept. 10th, for $250.00. Also the interest on the other two will become due at that time, the 2nd note will be due one year from that date and one year later the last one will be due. Of course you can pay them sooner if you choose. Please execute the two deeds to the Hamblin and the Presidio property as drawn, sign them before a notary public and send them to the Co. Clerks at Anson and Marfa to have recorded. Send a dollar with each and have them returned to me here. This is to show a consideration in your deed and is made a part of the consideration. I know you will not feel like you should accept this from me, but you must as it is my wish and I can't think of doing otherwise. It costs me more to write this than you will ever know, but the only satisfaction that I am to get is to know that I am leaving you provided for as my foster and adopted sister. * * * I will send you a draft for $400.00. Will send it to the bank there or may send it direct. This will leave you in good shape as the house is well worth $4,000.00 and should rent for from $30.00 to $40.00 per month. I am sure you can get it insured for $3,000.00 next time after this policy runs out. I will just leave everything I have in the house and that you and Mack can dispose of. When you return to see about it, bring this letter and show it to him, and he will understand all. I have foreseen this for sometime, but thought I could get it all shaped up. I see I cant and it is no fault of mine. If I could have gotten it all adjusted, we would have gotten married and lived as happy as is the lot of any couple. I could not marry you tho unless I could provide for you as I wanted to and now this is the only course for me to pursue. You know how some of the people here feel toward me since the city election, and but for that I could go through. They will swear anything and can and will ruin me if I try to stay. Now darling I know you will forgive me for all the little worries I have caused you in the last few months when it seemed to you that I had changed toward you. It was not that but I just could not tell you. It hurt me more than it did you. No matter what some may think, I know you to be a pure christian girl such as there are only very few. Remember me kindly always. Good-bye. Lovingly, Dick. The $400.00 is Bal. payment on the $500.00 I owe you. Dick." That on June 14, 1911, said R. H. Sanford, either in one package or in two different packages, inclosed all the above instruments to the appellant, and delivered, or caused to be delivered, to the United States mail the packages containing the same, duly addressed to the appellant, and that on the next day, June 15th, R. H. Sanford committed suicide.

The record conclusively shows that the appellant herein had no notice that R. H. Sanford intended or expected to execute the conveyances sought to be canceled herein, and the record warrants the further conclusion that such a conveyance or any kind of a conveyance was never discussed between R. H. Sanford and appellant, nor were any of the terms or conditions mentioned or stipulated in any of the written instruments so mailed to appellant by R. H. Sanford ever discussed between them or agreed upon between them prior to their being mailed to appellant. The record also shows that on the evening of June 15th, as the result of a telegram, appellant was informed of the death of R. H. Sanford, and at once left for Canyon City, and that as a result thereof neither the letter nor either of the written instruments which had been mailed to her reached her until about June 19, 1911, and that they were then received by her at Canyon City, they having been returned by due course of mail from the point which they had been addressed to her at Canyon City, where she then was; that she knew nothing of the intended purported conveyance by Sanford or of any of the other terms or conditions in any of the written instruments so mailed to her until after she reached Canyon City on the evening of June 16, 1911. On the trial below appellant testified that, as soon as she learned of the purported conveyance, she intended to accept the terms and conditions therein set forth, though the record shows that a number of conferences were held by and between her and the appellee with a view of adjusting matters without litigation, looking to removing the cloud from title, created by the recording of the instrument sought to be

canceled in this suit, in none of which did she inform appellee that she was disposed to accept or ratify the terms and conditions set forth in the deed or that she had done so. The record further shows that one of the notes mentioned in the conveyance sought to be canceled secured by a vendor's lien had matured, and that she had paid the same at the time of the trial, and the record also shows that on July 21, 1911, she did sign and acknowledge before a proper officer the two deeds which had been sent her by R. H. Sanford, and which have not been copied, but the record fails to show that either of said deeds had ever been delivered or tendered for delivery to appellee or to any person representing the estate of R. H. Sanford until during the progress of this trial below, when for the first time appellant's counsel did, in open court, tender delivery of said deeds to appellee or his counsel. As we view the record, as a whole, the transaction amounts to nothing more than a proposition by R. H. Sanford to appellant for sale or exchange of lands, and as the record conclusively shows that Sanford died before appellant accepted the proposition therein contained, or in any way acted upon the same, and, in fact, before she knew of the proposition, we think as a matter of law the death of Sanford withdrew the proposition, and appellant was powerless to accept the same after his death in such way as would be binding upon him or his estate, and that, therefore, the trial court correctly gave the peremptory instruction and rendered judgment canceling the instrument. Bullitt v. Taylor, 34 Miss. 708, 69 Am. Dec. 417; 4 Enc. Ev. 179.

[2] Appellant urges upon us the doctrine of presumption of acceptance by appellant because the letter above copied shows that the grantor in the instrument was intending to make a gift of something to the grantee, and that, therefore, the entire transaction shows that the grant was beneficial to the grantee. We are aware that it is the law that, where a conveyance is beneficial to the grantee and especially where the grantee is laboring under any disability, the presumption will exist in favor of acceptance to such an extent as to put the grant in operation from the moment of its execution by the grantor. But in this case the purported grant shows clearly that, in order for the grantee to accept, onerous burdens must have been assumed by her; and for that reason the rule applicable to gifts cannot apply in this case as to presumption of acceptance.

The record in this case also fails to inform us as to the value of the two pieces of land that appellant must have conveyed to R. H. Sanford in order to comply with the conveyance under which she claims, and, for aught we know from the record, the lands which she must have conveyed, in order to reap the benefit of the conveyance sought to be canceled, were worth in value many times more than that of the lands sought to be conveyed to her by R. H. Sanford in the instruments sought to be canceled, and for these reasons the record fails to show that the conveyance itself was or could be beneficial to appellant, and for that reason the rule applicable where the grant is beneficial to the grantee cannot apply in this case.

Many questions are discussed by appellant and appellee in their briefs bearing upon the question of delivery, but, if we are correct in the above conclusion, all such questions become immaterial, as the instrument sought to be canceled amounted to no more than a proposition for a trade, and the question of whether or not it had or had not been delivered would become immaterial.

Believing that the proper judgment was rendered by the trial court and that no error is pointed out by appellant under either of her assignments, the judgment of the trial court will be in all things affirmed; and it is so ordered.